UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
VIRGINIA TUFARO,

                    Plaintiff,

         -against-                               **FIRST AMENDED**
                                                   **COMPLAINT**

THE CITY OF NEW YORK, THE NEW YORK CITY      **Jury Demand**
POLICE DEPARTMENT, RIVERBAY CO-OP CITY
RIVERBAY CORPORATION, P.O. CATALA (shield 03989),  12 CV 7505 (AJN)
P.O. MELVIN GONZALEZ (shield 4237), P.O. JACINTO
CRUZ (shield 2132), JOHN and JANE DOES, 1-10,

                    Defendants.
------------------------------------------------------------------------X

      Plaintiff, VIRGINIA TUFARO, (hereinafter "Plaintiff") by and through her attorneys, VIKRANT PAWAR, ESQ. and ROBERT BLOSSNER, ESQ., respectfully allege as follows:

## JURISDICTION

      1.     Plaintiff invokes this Court's federal question jurisdiction under 28 U.S.C. §1331 and its civil rights jurisdiction under 28 U.S.C. §1337. With respect to all matters arising under the law of New York State, Plaintiff invokes this Court's supplemental jurisdiction 28 U.S.C. §1367.

      2.     The action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States and New York Constitutions and under New York state laws.

      3.     Jurisdiction is found upon 28 U.S.C. §§ 1331, 1343 and 1367.

## VENUE

      4.     Venue is properly laid in the Southern District of New York under 28 U.S.C.

§1391(b), in that it is the District in which the claim arose.

## JURY DEMAND

5.  Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.  Plaintiff VIRGINIA TUFARO is a citizen of the United States, and was at all times a resident in the County Bronx, State of New York.

7.  That at all times herein mentioned the plaintiff VIRGINIA TUFARO was a supervisor of nurses at Jacoby Medical Center, 1400 Pelham Parkway South, Bronx, New York.

## DEFENDANTS

8.  That at all the times herein mentioned the defendant **THE CITY OF NEW YORK (CITY)**, was a municipal corporation, duly organized and existing under and by the virtue of the laws of the State of New York.

9.  Defendant (City) is a public entity. This defendant is sued for wrongs committed by and through the Defendant NYPD, which, pursuant to New York law, is an administrative agency operating under the auspices and supervision of the defendant City.

10. That at all the times herein mentioned the defendants **THE NEW YORK CITY POLICE DEPARTMNT, (NYPD)** is an administrative agency duly organized and existing under and by virtue of the laws of the City of New York.

11. That at all times herein mentioned the defendants, **CITY** and **NYPD** undertook

2

and assumed the responsibility and duties of enforcing the laws and regulations of the State of New York within the geographic jurisdiction of the City of New York, including but not limited to protecting and keeping the public safe from harm and injury due to violations of law.

12.   That at all times herein mentioned the 43rd and 45th Precinct of the defendant NYPD was designated by the defendant City and defendant NYPD to have for the purposes of jurisdiction over that area within its confines owned and operated by the defendant RIVERBAY CORPORATION in the County of the Bronx, City and State of New York and is known as Co-Op City.

13.   That at all times herein mentioned, the Defendant RIVERBAY CORPORATION was and still is a domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York.

14.   That at all times herein mentioned, the Defendant RIVERBAY CORPORATION through its officers, employees, agents, and servants owned, operated, and managed Co-Op City.

15.   That at all times herein mentioned, the defendant RIVERBAY CORPORATION through its officers, employees, agents, and servants, maintained, directed, and operated a private security force which it designated as the Co-Op City Department of Public Safety.

16.   That at all times herein mentioned the defendant, RIVERBAY CORPORATION, through its aides, agents, officers, servants and employees was solely and exclusively responsible for the hiring, training, supervision, and control of its aides, officers, agents, servants and employees, including the officers and members of its Department of Public Safety.

17.   That at all times herein mentioned the defendant, RIVERBAY CORPORATION,

through its aides, agents, officers, servants, and employees was solely and exclusively responsible for the promulgation of rules, regulations and protocol to follow and steps to be taken by them in emergency situations concerning the health, wellbeing and safety of the residents, guests, invitees, and employees of Co-Op City and others who were under its exclusive control and supervision.

18. That at all times herein mentioned the defendant RIVERBAY CORPORATION, through its, aides, officers, agents, servants and employees supervised the activities of its Department of Public Safety.

19. That at all the times herein mentioned the defendant RIVERBAY CORPORATION was responsible for the compliance by its aides, officers, agents, and employees with all of the laws, statutes and regulation both civil and criminal of the City and State of New York and their respective political subdivisions, agencies and regulatory agencies.

20. That at all times herein mentioned, the defendant RIVERBAY CORPORATION maintained, directed and operated said Co-Op City Department of Public Safety for the stated purpose of protecting the property, citizens, employees of, and visitors to Co-Op City, and to enforce state and city laws on Co-Op City property.

21. That at all times herein mentioned, the defendant RIVERBAY CORPORATION armed the officers of said Department of Public Safety by equipping them with a firearm, can of pepper spray, baton, handcuffs, flashlight, and police radio, all of which were and remain the property of the defendant RIVERBAY CORPORATION.

22. That at all times herein mentioned, the defendant RIVERBAY CORPORATION

sought and obtained peace officer status for the members of the security force it operated and had designated as the Co-Op City Department of Public Safety.

23.  That at all times herein mentioned, the defendant **RIVERBAY CORPORATION** supervised and required all Co-Op Department Public Safety recruits in its employ to go through and pass a seven (7) week training course which included all necessary training required by the New York State Division of Criminal Justice Services for training as a Peace Officer. In addition, the recruits were trained in physical control of a subject, the use and effects of pepper spray and firearms training.

24.  That at all times herein mentioned, pursuant to an agreement entered into between the defendant **RIVERBAY CORPORATION**, the defendant **CITY**, and its administrative agency, the defendant **NYPD** by which the **CO-OP CITY DEPARTMENT of PUBLIC SAFETY** and it's officers were given the extraordinary authority to make arrests and process prisoners whom they had arrested on the grounds of Co-Op City. Said law enforcement activities and jurisdiction was to be concurrent and coextensive with those of the defendant CITY's NYPD.

25.  That at all times herein mentioned, the officers of the Co-Op City Department of Public Safety, and specifically the individual defendants (hereinafter "individual defendants") carried and were issued firearms, pepper spray, handcuffs, and other equipment of the kind and nature normally used and implemented by police officers. Such weapons and equipment as issued to the officers were authorized and owned by the defendant RIVERBAY CORPORATION.

26.  That at all times herein mentioned, the Defendant RIVERBAY CORPORATION

5

through its officers, agents, servants, and employees, had the responsibility of hiring, training, and directing the officers of its Department of Public Safety.-

27. The individual defendants including defendants Catala, Gonzalez, and Cruz are or were employees of the NYPD, and of the Co-Op City Department of Public Safety. The various John Doe Defendants participated in the wrongdoing at issue in this proceeding. Their individual identities and all of their wrongs are not yet known to the plaintiff but they are sued in their individual and official capacities.

28. At all pertinent times each individual defendants acted under color of State law and authority.

## THE FACTS

29. On or about October 22, 2009, the individual defendants affected the arrest of one SHARON SUTTON a 45-year old female. The Defendants charged SHARON SUTTON with violating the laws of the State of New York including Driving Under the Influence of Alcohol, a class A misdemeanor, hit and run and eventually Sutton received a sixty day sentence for her crime.

30. After taking SHARON SUTTON into custody as described above, the Defendants made a determination that their prisoner was unruly, combative, violent, and otherwise acting in bizarre manner to the extent that they believed her to be in need of medical treatment. In furtherance thereof, the defendants transported SUTTON to Jacoby Medical Center.

31. Once at Jacobi Medical Center, even though the individual defendants kept

the shackles on their prisoner's legs to prevent her from fleeing, they left the hands and arms of SHARON SUTTON unsecured, and indeed left her unguarded on a hospital gurney while she awaited examination by plaintiff.

32. Plaintiff, a supervising nurse employed at Jacoby Medical Center inquired of the individual Defendants as to the safety of her staff, and was told by said individual Defendants that SHARON SUTTON was securely in their custody as a prisoner, and would not be a threat to Plaintiff, her staff, nor anyone else upon the physical plant of the Jacoby Medical Center.

33. Plaintiff inquired of the Defendants what SHARON SUTTON had done that caused her being taken into custody, and why the Defendants believed that their prisoner needed medical attention. In response Defendants advised the Plaintiff that SHARON SUTTON had been charged with driving while intoxicated, hit and run and assault and had thereafter been acting bizarrely, Plaintiff suggested that patients such as these were usually secured and closely guarded by the accompanying officers.

34. Plaintiff was then informed by the individual defendants that she should not worry, that they, the Defendants had the situation well in hand. The individual Defendants further told Plaintiff that "You don't have to worry", and that SHARON SUTTON would not bother anyone and they would be standing closely by and would protect the Plaintiff, along with those she supervised, and everybody else in the unit which they claimed was their job, and that nobody including her (the Plaintiff) need worry.

35. Based upon the above representations of the Defendants, Plaintiff continued to treat and examine the prisoner SHARON SUTTON. Thereafter, while Plaintiff in her capacity as supervising nurse at Jacoby Medical Center was attempting to administer SUTTON by inserting

7

an IV solution line into her arm, whose hands and arms were not fully secured, although her feet were shackled, abruptly, and without warning attacked and assaulted Plaintiff. Ms. Sutton grabbed plaintiff's left arm, dug her fingernails deeply into plaintiff's arm, puncturing plaintiff's skin, and pulled and yanked plaintiff's arm in a direction away from her body.

36. The Plaintiff was attacked at a time when both of the individual Defendants were not immediately available to protect her although they had promised Plaintiff that they would be. The Defendants did not restrain SHARON SUTTON until after she had badly injured Plaintiff.

## AS AND FOR FIRST CAUSE OF ACTION
(Failure to protect)

37. Plaintiff repeats and realleges each and every allegation hereinbefore stated with the same force and effect as if the same were again set forth at length.

38. That at all times herein mentioned the individual defendants, jointly and severally, through their aides, officers, agents, servants and employees brought and caused to be brought, an unruly, uncontrollable, intoxicated, and violent person to the workplace of the plaintiff and after presenting said prisoner for treatment, the defendants did not properly confine, subdue or otherwise restrain said person thereby exposing plaintiff to the physical harm which, was instilled upon plaintiff when she was grabbed and violently pulled by said intoxicated person.

39. That at all times herein mentioned, it was the duty of the defendants, jointly and severally, to keep, and maintain any area into which they brought prisoners in their custody in a reasonably secure condition so that public and specifically those persons including the Plaintiff who are employed at such location and/or who lawfully used the premises would be safe from injury due to attack by such prisoners.

40. That at all times herein mentioned, it was the duty of the defendants, jointly and severally, to keep, maintain, restrain, and subdue, and otherwise control prisoners within their custody so that the public at large, and in particular the Plaintiff, and Plaintiff's co-workers who were lawfully upon the premises thereat, would be safe and free from assault and injury.

41. That at all times herein mentioned, the defendants, jointly and severally, were under a duty and obligation to properly restrain and secure unruly, obstructive, violent, and/or intoxicated persons in their custody so that all other lawful users of such premises would be safe from assault, and/or injury from such person.

42. That at all times herein mentioned, contrary to their duties and responsibilities the defendants jointly and severally permitted and allowed their prisoner, a female, to remain at least partially unrestrained in that at least one of her hands and arms were free to move in any axis or direction.

43. That at all times herein mentioned, plaintiff was requested by the defendants to render medical aid to defendant's prisoner whom defendants had permitted to remain at least partially unrestrained and who defendants had not informed plaintiff had previously exhibited bizarre behavior.

44. That upon being presented with the female prisoner by the defendants, plaintiff as supervising nurse inquired if the prisoner was dangerous and/or combative.

45. That at all times herein mentioned, SHARON SUTTON, a prisoner, having been taken into custody by the defendants was brought into Jacoby Medical Center located at 1400 Pelham Parkway South in the County of the Bronx, City and State of New York for the specific purpose of receiving medical attention due to her bizarre and aggressive actions.

46. That on October 22, 2009, the defendants, jointly and severally permitted a prisoner in their custody and known to the defendants to be violent, combative, unruly, obstructive and unresponsive to command, to be only partially restrained, unsecured and otherwise placing civilians within their prisoner's reach in a dangerous situation.

47. That on or about October 22, 2009 and for a period of time prior thereto, the defendants, jointly and severally, despite being were aware of the violent and combative tendencies of a prisoner in their custody allowed and permitted the said prisoner to be unrestrained to such extent that the prisoner was capable of extending her arm and hand to strike and assault civilians in the immediate vicinity of their prisoner.

48. That at all times herein mentioned the defendants allowed and permitted an unreasonable and foreseeable risk of harm to exist in violation of their duties and responsibilities.

49. That at all times herein mentioned, the defendants violated their duty to persons lawfully at the Jacoby Medical Center at 1400 Pelham Parkway South, Bronx, New York, and to the plaintiff's, VIRGINIA TUFARO, by permitting and allowing the prisoner, SHARON SUTTON, in defendants custody to become and remain in a such dangerous condition as would permit her to be able to assault plaintiff.

50. That at all times herein mentioned, the defendants, jointly and severally failed to take reasonable safe guards and precautions for the safety of all persons lawfully upon the premises where defendants brought such combative, unruly, disruptive and intoxicated person to.

51. That at all times herein mentioned, defendants, jointly and severally by their actions and failure to act responsibly under the conditions therein existing, caused, permitted and

10

allowed such dangerous condition to exist all of which resulted in the unprovoked attack and assault upon the plaintiff VIRGINIA TUFARO.

52. That on October 22, 2009, while the plaintiff's VIRGINIA TUFARO was acting in her capacity as supervising nurse at Jacoby Medical Center and was attempting to render medical attention to the improperly restrained SHARON SUTTON. Plaintiff was violently assaulted by the defendant's prisoner who grabbed plaintiff's arm with her unrestrained hand and proceeded to puncture plaintiff's skin with her finger nails and pull and squeeze plaintiff's arm causing plaintiff to suffer severe physical and psychological injuries, including excruciating pain.

53. At all times herein mentioned, Defendants were aware of SUTTON's dangerous propensities but yet failed to protect plaintiff.

### AS AND FOR A SECOND CAUSE OF ACTION
(Special relationship doctrine/State created danger)

54. The plaintiff repeats and realleges each and every allegation hereinbefore stated with the same force and effect as if the same were again set forth at length.

55. The individual defendants without authority or exigent circumstance created a foreseeable hazardous condition that resulted in severe injury to the plaintiff.

56. That by failing to protect plaintiff and other civilians similarly situated, by abdicating its statutory and sworn duties to the public in general and to the plaintiff in particular, the individual defendants abandoned the plaintiff and by their failure to personally act in their official capacity and authority, the defendants created an opportunity that otherwise would not have existed for a third party's crimes including Assault to occur.

57. The defendants expressly promised plaintiff and her staff that she was in no

11

danger because the individual defendants were present at the scene and that plaintiff relied upon defendants' express promises.

58. Despite these assurances, the individual defendants created an environment where an unruly, aggressive and violent SUTTON was able to reach Plaintiff and assault Plaintiff.

59. That as a result of the defendants' failure to personally act pursuant to their statutory and self-proclaimed duties and obligations and by recruiting non or undertrained parties to fill in and/or otherwise substitute for them, the defendants established a state created danger and hazardous condition.

60. That as a result of the defendants' failure to personally perform their duties and by their recruiting and permitting now, or undertrained persons to fill in or otherwise substitute for the defendants, it was reasonably foreseeable that such conditions as created thereby would lead to harm and a serious physical and emotional injury to plaintiff when a criminally charged prisoner was brought to plaintiff for medical treatment.

61. The foregoing facts state a claim for denial of substantive due process of law by creating dangerous condition.

### AS AND FOR A THIRD CAUSE OF ACTION
(Due Process-14th Amendment)

62. Plaintiff repeats the foregoing paragraphs as if fully set forth herein.

63. Defendants individual and collective conduct deprived Plaintiff of her procedural and substantive due process rights in that she was deprived of her liberty and the deliberate indifferent acts of the individual defendants caused her harm.

## AS AND FOR THE FOURTH CAUSE OF ACTION
(*Monell* Municipal Liability)

64. Plaintiff repeats, reiterates and realleges the preceding paragraphs with the same force and effect as if fully set forth herein.

65. Defendant collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

66. The aforementioned customs, policy, usages, practices, procedures and rules of the City and Police Department, included, but were not limited to, transferring the responsibility of governing, transporting, processing and otherwise guarding persons in their custody to an insufficiently trained, insufficiently supervised entity which was and is not a government agency but a private corporation.

67. Furthermore, the custom of permitting non NYPD personnel to transport prisoners and lack of policy regarding the guarding and custody of prisoners that resulted in unnecessary injury conditions. The ongoing customs and lack of policy also encourages violation of the rights of public bystanders as occurred herein when a deranged prisoner was transported across the Bronx by untrained personnel and ended up assaulting a hospital worker.

68. As a result of the failure of the City and NYPD to properly recruit, screen, train, discipline, and supervise the officers and those others it authorizes and/or permits to act in its stead, including the individual defendants, defendants have tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

69. As a result of this conduct and through discovery, it will be established that the

13

City of New York is liable under *Monell* in that the City and NYPD engaged in a policy custom of inadequate screening, hiring, retaining, training and supervising those to whom it transferred its responsibilities which was the moving force behind the violation of Plaintiff's rights as described herein.

70. Although each new arrestee is to be brought before a desk supervisory officer at the Precinct of arrest who is to review for accuracy and propriety the charges, evidence and access the conditions of the prospective defendant. In the instant matter there was a purposeful and intentional avoidance of supervisory responsibility in that it was a departmental decision to transfer the defendant's obligations and responsibility to others who were improperly trained and improperly prepared. The defendant NYPD, acquiesced, turned a blind eye and otherwise permitted non police personnel to transport violent and/or intoxicated prisoners. This practice and custom which came in the form of an agreement between the defendants existed and continued to exist over a period of several years. The implications for this practice which permitted non-NYPD personnel to perform the duties of defendant NYPD was the moving force behind the violation of plaintiff's civil rights.

## AS AND FOR THE FIFTH CAUSE OF ACTION
(Negligent Screening, Hiring, and Retention under the laws of the State of New York)

71. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "70" with the same force and effect as if fully set forth herein.

72. Upon information and belief, individual defendants and RIVERBAY CORPORATION jointly and severally failed to use reasonable care in the screening, hiring and retention of the aforesaid individual defendants who conducted and participated in the violation of Plaintiff's rights.

14

### AS AND FOR THE SIXTH CAUSE OF ACTION
(Negligence under the laws of the State of New York)

73. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "72" with the same force and effect as if fully set forth herein.

74. Defendant RIVERBAY CORPORATION is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful and negligent conduct described herein.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
(Intentional and Negligent Infliction of Emotional Distress under the laws of New York)

75. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "74" with the same force and effect as if fully set forth herein.

76. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

77. The aforementioned conduct was committed by defendants whole acting in furtherance of their employment by defendants.

78. As a result of the aforementioned conduct, Plaintiff suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom.

**WHEREFORE,** Plaintiff demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A) Full and fair compensatory damages in an amount of Five Hundred Thousand Dollars for each and every cause of action for plaintiff against defendants (individually or collectively) or as determined by a jury.

(B) Reasonable attorney's fees and the costs, expenses and disbursements of this action; and

(C) Such other and further relief as appears just and proper.

Dated: New York, New York
February 7, 2013

                                        PAWAR LAW GROUP P.C.
                                        20 Vesey Street – Suite 1210
                                        New York, New York, 10007
                                        (212) 571-0805

By: _____
                                        Robert Blossner, Esq.
                                        Vikrant Pawar, Esq.
                                        *Attorneys For Plaintiff*