USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: AUG 2 8 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Virginia Tufaro,

           Plaintiff,

–v–

The City of New York, The New York City Police Department, Riverbay Co-Op City Riverbay Corporation, P.O. Catala (shield 03989), P.O. Melvin Gonzalez (shield 4237), P.O. Jacinto Cruz (shield 2132), John and Jane Does 1-10,

           Defendants.

12-CV-7505 (AJN)

MEMORANDUM AND ORDER

---

ALISON J. NATHAN, District Judge:

    Before the Court are the Defendants' motions to dismiss. The City of New York, Detective Rodell Glover, and Detective Tyrone Tillman collectively are referred to herein as the "City Defendants," while Riverbay Co-Op City, Riverbay Corporation, P.O. Catala (shield 03989), P.O. Melvin Gonzalez (shield 4237), and P.O. Jacinto Cruz (shield 2132) collectively are referred to herein as the "Riverbay Defendants." Although the City and Riverbay Defendants raise slightly different arguments in their separate moving papers, both raise the same dispositive issue that the Court will address here—whether Plaintiff's allegations state a claim under 42 U.S.C. § 1983. The Court concludes that they do not and accordingly grants the motions to dismiss.

I.    **BACKGROUND**

    The factual allegations stated below are taken from Plaintiff's Second Amended Complaint ("SAC"), Dkt. No. 30, and are presumed true and construed in Plaintiff's favor for the purposes of deciding the City and Riverbay Defendants' motions to dismiss. *See, e.g., Krassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

1

On or about October 22, 2009, individual Defendant officers, possibly including Tillman, Glover, Catala, Gonzalez, and Cruz,[1] arrested an individual named Sharon Sutton in or near a housing development known as Co-Op City that is owned and operated by Riverbay Corporation. An agreement between Riverbay Corporation and the City of New York allegedly gives the Co-Op City Department of Public Safety and its officers the authority to make arrests and process prisoners arrested on the grounds of Co-Op City as if they were New York City police officers. Sutton was charged with driving under the influence and a hit-and-run offense. After taking her into custody, the officers determined that she was unruly, combative, violent, and otherwise acting in a bizarre manner, which led them to believe the she was in need of medical treatment. Thus, the officers transported Sutton to the Jacoby Medical Center.

At the Jacoby Medical Center, the officers kept Sutton's feet shackled to prevent her from fleeing, but left her hands and arms unsecured and apparently left Sutton unguarded while on a hospital gurney awaiting examination. Plaintiff, Virginia Tufaro, was a supervising nurse employed at Jacoby Medical Center. At some point, Plaintiff asked the officers whether there was any cause for concern as to the safety of her staff, and she was told that Sutton was securely in the custody of the officers as a prisoner and would not be a threat to Plaintiff, her staff, or anyone else in Jacoby Medical Center. Plaintiff then inquired about what Sutton had done and why the officers believed Sutton needed medical attention. The officers replied that Sutton had been charged with driving while intoxicated, hit and run, and assault and had acted bizarrely; Plaintiff apparently then suggested that patients such as Sutton were usually secured and closely guarded by accompanying officers. The officers replied that Plaintiff should not worry because they had the situation under control, telling Plaintiff "You don't have to worry," Sutton would

---

[1] Glover and Tillman are apparently officers with the New York City Police Department while Officers Catala, Gonzalez, and Cruz are apparently officers with the Co-Op City Department of Public Safety. Plaintiff's Second Amended Complaint does not distinguish between the individual Defendants and so the Court refers to them collectively as the "officers." For the purposes of this Memorandum and Order, it is not necessary to know the precise identity of the officers or their affiliation.

2

not bother anyone, and that the officers would be standing close by and would protect Plaintiff and those around her.

Based on these representations, Plaintiff continued to treat and examine Sutton. At some later point, while Plaintiff was attempting to administer an IV solution into Sutton's arm, Sutton used her free hands and arms to attack and assault Plaintiff. Sutton grabbed Plaintiff's left arm, dug her fingernails deeply into Plaintiff's arm, thereby puncturing Plaintiff's skin, and pulled and yanked Plaintiff's arm. The Officers were apparently not immediately available to protect Plaintiff and only secured Sutton's arms after the attack.

## II. DISCUSSION

### A. Legal Standard

On a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a district court is to accept as true all facts alleged in the complaint and is to draw all reasonable inferences in favor of the plaintiff. *See, e.g., Krassner*, 496 F.3d at 237. Factual allegations are therefore afforded a presumption of truth, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### B. Substantive Due Process Claims

Plaintiff's only federal law claims arise under 28 U.S.C. § 1983 for alleged violations of her constitutional rights, specifically her substantive due process rights under the Fourteenth Amendment to the United States Constitution. Plaintiff does not allege that she directly suffered any harm at the hands of government actors, be they New York City Police Department Officers or Co-Op City Officers operating under color of law; rather, she alleges the she was attacked by a private actor, Sutton, whom the officers failed to properly restrain. Because the Court concludes that the Plaintiff has failed to state a constitutional violation under the Fourteenth

Amendment against any officer, it need not decide whether the Co-Op City Officers were state actors and will instead assume that they were for the purposes of deciding this motion.

In *DeShaney v. Winnebago County Department of Social Services*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." 489 U.S. 189, 196 (1989). Drawing on the reasoning of *DeShaney*, the Second Circuit has recognized two narrow exceptions to this rule. *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). The first exception covers acts of private violence where the state had a "special relationship" with the victim. *Id.* (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993)). The second exception covers situations in which the state or its agents "'in some way had assisted in creating or increasing the danger to the victim.'" *Id.* (quoting *Dwares v. City of New York*, 985 F.2d 94, 98-99 (2d Cir. 1993)). But even if Plaintiff is able to satisfy one of these exceptions, she "must [also] show that the officers' behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998) ("*Lewis*")).

The special relationship exception requires some form of involuntary custody of the Plaintiff. *Id.* (citing *Lombardi v. Whitman*, 485 F.3d 73, 79 n.3 (2d Cir. 2007); *Suffolk Parents of Handicapped Adult v. Wingate*, 101 F.3d 818, 824 (2d Cir. 1996); *Doe v. N.Y. City Dep't of Soc. Servs.*, 649 F.2d 134, 141 (2d Cir. 1981)). Because Plaintiff was not in involuntary custody at the time of her attack, she fails to satisfy this exception to *DeShaney*.

The state-created danger exception requires some form of affirmative, rather than passive, conduct on the part of a government actor that "communicates, explicitly or implicitly, official sanction of private violence." *Okin v. Vill. Of Corwall-on-Hudson Police Dep't*, 577 F.3d 415, 429 (2d Cir. 2009) (citing *Pena v. DePrisco*, 432 F.3d 98, 111 (2d Cir. 2005); *Hemphill v. Schott*, 141 F.3d 412, 419 (2d Cir. 1998); *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993)). Thus, for example, a state-created danger has been found to exist where

4

officers callously signaled to an alleged domestic abuser that he could act with impunity when they casually discussed sports with him and spoke derisively about the alleged victim following her calls for assistance, *Okin*, 577 F.3d at 427-430; officers told skinheads that they would not intervene to stop the skinheads from assaulting flag-burning protesters unless things got too rowdy, *Dwares*, 985 F.2d at 99; officers returned a gun to the victim of a robbery and allowed the victim to join in the pursuit of the alleged robber leading to the victim shooting the robber, *Hemphill*, 141 F.3d at 419; officers encouraged another officer to drink to excess and drive in that condition with impunity, which led to the deaths of three people, *Pena*, 432 F.3d at 111; or officers designed a sting operation in such a way that the private assailant would learn about plaintiff's involvement and identity, *Matican*, 524 F.3d at 158 & n.7.

But under the Supreme Court's holding in *DeShaney*, "'allegations that the defendant officers stood by and did nothing are insufficient to state a constitutional violation.'" *Matican*, 524 F.3d at 157 (quoting *Pena*, 432 F.3d at 110)). Furthermore, "[i]t is not enough to allege that a government actor failed to protect an individual from a known danger of bodily harm or failed to warn the individual of that danger." *Lombardi*, 485 F.3d at 79 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125-29 (1992)). And "[t]his is so notwithstanding [a plaintiff's] assertion that the officers promised to protect him." *Matican*, 524 F.3d at 158 (citing *DeShaney*, 489 U.S. at 200 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him . . . .")).

Plaintiff alleges only that Defendants failed to restrain Sutton's arms in addition to Sutton's feet while being treated by Plaintiff. Plaintiff does not allege that the officers in any way encouraged Sutton to attack Plaintiff or indicated that Sutton could do so with impunity. It may be the case that the officers owed Plaintiff a duty of care under state tort law; indeed, Plaintiff alleges several claims based on such a theory. "But the claim here is based on the Due Process Clause of the Fourteenth Amendment, which, as [the Supreme Court has] said many times, does not transform every tort committed by a state actor into a constitutional violation." *DeShaney*, 489 U.S. at 201 (citations omitted). As the Supreme Court made clear in *DeShaney*,

5

"[a] State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes. But not 'all common-law duties owed by government actors were . . . constitutionalized by the Fourteenth Amendment.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 335 (1986)).

Plaintiff offers no countervailing authority to the principles identified here. Instead, Plaintiff only points to *Dwares* as standing for the proposition that a "due process claim was stated where police officers knew of, and failed to intercede to stop a particular violent attack." Opp. at 18 (Dkt. No. 57). In an effort to align her circumstances with those in *Dwares*, Plaintiff highlights the fact that the Defendants took custody of Sutton, used force including pepper spray to subdue her, and were aware of her violent tendency, but did not relay this information to Plaintiff and did not properly secure Sutton. Opp. at 19. From this, Plaintiff concludes that "Sutton was a state created danger that was intentionally put in the vicinity of plaintiff." Opp. at 19. But in *Dwares*, the plaintiff's complaint "alleged that the officers conspired with the 'skinheads' to permit the latter to beat up flag burners with relative impunity, assuring the 'skinheads' that unless they got totally out of control they would not be impeded or arrested." 985 F.2d at 99. By encouraging the skinheads in such a manner, the officers' actions crossed the line from passive to active conduct. *Matican*, 524 F.3d at 157. Construing the facts as favorably as possible for Plaintiff, she merely asserts that the defendant officers stood by and did nothing despite assuring her that they would protect her from a known danger; such passive conduct is insufficient to state a claim under Section 1983. *See Matican*, 524 F.3d at 157-58 (citing *DeShaney*; 489 U.S. at 200; *Pena*, 432 F.3d at 110; *Lombardi*, 485 F.3d at 79).

Assuming, for the sake of argument, that Plaintiff were able to satisfy the state-created danger exception to *DeShaney*, she must also allege that the officers' behavior was so egregious that it shocked the conscience. *Matican*, 524 F.3d at 155. "This requirement screens out all but the most significant constitutional violations, 'lest the Constitution be demoted to . . . a font of tort law.'" *Id.* (quoting *Lewis*, 523 U.S. at 848 n.8). It may appear difficult to define precisely the type of behavior that would shock the conscience, but "the Supreme Court noted one set of

6

parameters: negligently inflicted harm is categorically beneath the threshold of constitutional due process, whereas the intentional infliction of injury is the conduct most likely to rise to the conscience-shocking level." *Matican*, 524 F.3d at 158 (internal citations and quotation marks omitted). Although there is obviously some gray area between these two poles, the conduct alleged by Plaintiff clearly falls in the former category. By the very terms of her Complaint, Plaintiff alleges only that Defendants failed to properly confine or restrain Sutton, not that they intentionally or recklessly caused Plaintiff's injuries. Indeed, all but one of her state-law claims are based in negligence—negligent screening, hiring, and retention; negligence; and negligent infliction of emotional distress. SAC ¶¶ 71-78.

Therefore, because the Plaintiff has failed to allege a state-created danger or conduct that shocks the conscience, she has failed to state a claim for a constitutional violation of her substantive due process rights under Section 1983.

### C. Supplemental Jurisdiction and Remaining Claims

Having dismissed all claims over which this Court has original jurisdiction, the Court exercises its discretion to decline to exercise supplemental jurisdiction over Plaintiff's remaining claims. 28 U.S.C. § 1367(c)(3); *Matican*, 524 F.3d at 154-55 ("Furthermore, if Matican has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims." (citing *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).

## III. CONCLUSION

For the reasons stated herein, both the Riverside and City Defendants' motions are GRANTED and all claims against the Defendants are dismissed. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: _____, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge